UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**THERMO CREDIT, LLC**                                     **CIVIL ACTION**

**VERSUS**                                                 **NO. 12-1454**

**CORDIA CORPORATION, et al.**                             **SECTION: "G"(1)**

## ORDER AND REASONS

Before the Court is Defendant Maria A. Abbagnaro's ("Abbagnaro") Motion to Dismiss,[1] wherein she seeks the dismissal of all claims against her pursuant to Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. After considering the motion, the memorandum in support, the opposition, the reply, the record, and the applicable law, the Court will deny the pending motion.

## I. Background

*A. Factual Background*

Plaintiff Thermo Credit, LLC ("Thermo") filed a Petition for Damages in the Civil District Court for the Parish of Orleans, State of Louisiana.[2] In the Petition for Damages, Thermo made Cordia Corporation ("Cordia") and Abbagnaro defendants. Cordia is a Nevada corporation with its principle place of business in Florida, and Abbagnaro is a licensed attorney and citizen of Connecticut that at all relevant times acted as general counsel for Cordia.[3]

In the Petition for Damages, Thermo explains that in 2007, it was approached about providing funding to Cordia for acquisition and working capital. Cordia and Thermo negotiated a

---

[1] Rec. Doc. 5.

[2] Rec. Doc. 1-1.

[3] *Id.* at ¶¶ 2-3.

"factoring agreement, whereby Thermo would purchase Cordia's accounts receivable for services provided to telephone customers, and would advance funds to Cordia against those accounts receivable."[4] The factoring agreement (hereinafter "the agreement") contained a provision that Cordia would only sell "Eligible Receivables" to Thermo, which were defined as receivables "owned by [Cordia] free and clear of any Adverse Claim." On September 17, 2007, Abbagnaro provided a letter to Thermo titled "Form of Opinion of Counsel for the Seller" (hereinafter "the letter"). Thermo has attached the letter to its Petition.[5] In the letter, Abbagnaro wrote that "[Cordia] has made all filings with, and has obtained all necessary licenses and approvals from federal and State Government authorities, which such licenses and approvals are in full force and effect... that are necessary to permit [Cordia] to own lease and operate its properties and to consummate the transaction contemplated by [the agreement]," and that Cordia had the corporate power and authority to perform the agreement without the consent of any other party.[6]

Thermo claims that Abbagnaro "knew Thermo would rely on [the letter] in deciding whether to enter into [the agreement] with Cordia, and thus had a duty to supply correct information and to refrain from supplying incorrect information," especially because Thermo did not use its own attorney in this matter, a fact that Abbagnaro was aware.[7]

Cordia and Thermo entered into the agreement on September 21, 2007, and made several amendments thereafter. One of the amendments provided that all transactions under the agreement

---

[4] *Id.* at ¶ 4.

[5] *Id.* at p. 7.

[6] *Id.* at ¶¶ 7, 9.

[7] *Id.* at ¶ 10.

2

would grant Thermo a security agreement that would give Thermo first priority perfected security interest in the accounts receivable. None of Cordia's subsidiaries were made a party to the agreement or the amendments. Thermo avers that it relied on Abbagnaro's letter and inferred that because Abbagnaro claimed that Cordia had the legal authority to sell receivables, that it actually owned receivables at that time which were available for sale. However, "Thermo later learned that Cordia did not own the receivables, and therefore, did not have the power to perform the transactions contemplated in [the agreement], as was represented by Abbagnaro."[8]

On September 24, 2007, Thermo made its initial purchase of receivables from Cordia. The amounts were generated from three Cordia subsidiaries. On May 1, 2011, these Cordia subsidiaries filed for voluntary bankruptcy in the United States Bankruptcy Court for the Middle District of Florida. Cordia itself did not file for bankruptcy. Cordia's subsidiaries claimed that Thermo did not have an ownership interest or security interest in the accounts receivables generated by them, because it was Cordia that entered into the agreement, not the subsidiaries.[9]

In response, Thermo filed an adversary proceeding against the subsidiaries to assert its interest and priority in the accounts receivable. The bankruptcy court dismissed Thermo's adversary proceeding, agreeing with the Cordia subsidiaries that because the subsidiaries were not a party to the agreement, Thermo had not perfected an interest in the receivables.[10] Thermo now seeks relief claiming that "the representations made by Abbagnaro on behalf of Cordia and the arguments advances by Cordia in the Adversary Proceeding are wholly inconsistent. On the one hand,

---

[8] *Id.* at ¶ 12.

[9] *Id.* at ¶¶ 15-16.

[10] *Id.* at ¶ 18.

Abbagnaro represented that Cordia could consummate the transactions contemplated by [the agreement] (ie, to sell accounts receivable to Thermo); on the other hand, counsel argued in the Bankruptcy Case that Cordia did not own the accounts receivable and was not authorized to sell them to Thermo. Abbagnaro's representations in the Letter were false."[11]

Thermo claims that Abbagnaro is liable for negligent misrepresentation for failing to provide accurate and truthful information regarding Cordia's ability to enter and perform the transaction contemplated by the agreement. Thermo further claims that Cordia is also responsible for Abbagnaro's actions because she was acting in her capacity as an employee.[12]

### *B. Procedural Background*

Thermo originally filed its Petition for Damages in Civil District Court for the Parish of Orleans, State of Louisiana.[13] On June 6, 2012, Abbagnaro, with the consent of Cordia, removed this action to this Court upon diversity jurisdiction.[14] Abbagnaro filed the pending motion on July 2, 2012.[15] Thermo filed an opposition on August 7, 2012.[16] With leave of court, Abbagnaro filed a reply on August 15, 2012.[17]

---

[11] *Id.* at ¶ 19.

[12] *Id.* at ¶¶ 20-21.

[13] Rec. Doc. 1-1.

[14] Rec. Doc. 1.

[15] Rec. Doc. 5.

[16] Rec. Doc. 8.

[17] Rec. Doc. 13.

## II. Parties' Arguments

In support of the pending motion, Abbagnaro claims that the action against her must be dismissed because Thermo has failed to allege sufficient facts to state a "facially plausible claim" against her.[18] Abbagnaro explains that while a motion to dismiss usually only considers the complaint, if documents are attached or referenced in the complaint, they may also be considered; further, if those documents contradict the allegations in the complaint, the action should be dismissed.[19]

Abbagnaro claims that Thermo has failed to state a cause of action for negligent misrepresentation. Abbaganro explains that under Louisiana law, to succeed on a cause of action for negligent misrepresentation, a plaintiff must prove (1) that the defendant breached a legal duty to the plaintiff by providing inaccurate or false information; and (2) that this breach resulted in the plaintiff sustaining damages as a direct and proximate consequence of the plaintiff's reasonable and justified reliance on that inaccurate information.[20]

Concerning the first element to succeed on an action for negligent misrepresentation, Abbagnaro argues that Thermo has not alleged that the letter contained any misrepresentations, but instead Thermo has argued that the letter was misleading because it gave Thermo the impression that Cordia would follow the agreement and only offer Eligible Receivables. However, Abbagnaro avers that nowhere in the letter did she claim that "Cordia had an ownership in any particular receivable, much less opine whether any particular receivable claimed by Cordia otherwise qualified as an

---

[18] Rec. Doc. 5-1 at p. 15.

[19] *Id.* at p. 16 (citing *Assoc. Builders, Inc. v. Ala. Power Co.*, 505 F.2d 93, 100 (5th Cir. 1974)).

[20] *Id.* at p. 17 (citing *Kadlec Med. Ctr. v. Lakeview Anesthesia Assocs.*, 527 F.3d 412, 418 (5th Cir.), *cert. denied*, 555 U.S. 1045 (2008)).

'Eligible Receivable' under the terms of the agreement," and could not have done so at that time because no receivables had yet been offered from Cordia to Thermo.[21]

In summation, Abbagnaro claims that all the letter stated was that Cordia had taken the appropriate steps to be able "freely to convey and/or encumber receivables contemplated by [the agreement]."[22] Further, Abbagnaro argues that Thermo's claims that it inferred something more from the letter is in direct contravention of the express terms of the letter which stated that the opinions in the letter "are limited to those matters expressly set forth herein, and no opinion may be implied or inferred beyond the matters expressly stated."[23]

In addition, Abbagnaro contends that Thermo has not pled facts sufficient to support a claim of justified reliance and causation of damages. While Thermo maintains that it was improperly sold ineligible receivables by Cordia, for the same reasons outlined above, Abbagnaro claims that it was not reasonable for Thermo to rely on the letter from Abbagnaro to conclude that Cordia would follow the agreement. Abbagnaro contends that the letter contains no such "assurances or guarantees."[24] Moreover, Abbagnaro claims that beginning with the first purchase, Thermo was aware that the receivables offered were specifically attributed to Cordia subsidiaries because this information appeared "on the face of the offering documents tendered by Cordia."[25] In addition, Abbagnaro argues that Thermo was "told in advance of each 'purchase' transaction under [the

---

[21] *Id.* at p. 18.

[22] *Id.*

[23] *Id.* at p. 19, n. 10.

[24] *Id.* at pp. 19-20.

[25] *Id.* at p. 20.

6

agreement] that the specific receivables it was being offered in fact belonged to other entities."[26] Abbagnaro argues that Thermo may have a claim against Cordia for offering non-eligible receivables as outlined in the agreement, and therefore may pursue a claim against Cordia, but that this does not impose liability on Abbagnaro, who never guaranteed Cordia's performance.[27]

In the alternative, Abbaganro argues that Thermo's claims are barred under peremption and/or prescription. Specifically, Abbaganro highlights Louisiana Revised Statue § 9:5605, which imposes a three-year peremptive period on all claims arising out of the engagement of legal services. Therefore, Abbagnaro maintains that any cause of action arising from her September 13, 2007 letter was perempted when this suit was filed in 2012.[28]

In anticipation of an argument from Thermo, Abbagnaro argues that § 9:5605 does apply to out-of-state attorneys, a conclusion that another section of this Court has previously adopted.[29] Moreover, Abbaganro argues that an interpretation of § 9:5605 that only applied the three-year peremptive period to in-state lawyers would be violative of the Dormant Commence Clause, because it would benefit in-state economic interests by burdening out-of-state competitors."[30]

However, Abbaganro further argues that if § 9:5605 does not apply to this action, Thermo's claims have still prescribed pursuant to Louisiana Civil Code article 3492, which imposes a one year

---

[26] *Id.* (citing Rec. Doc. 5-2).

[27] *Id.* at p. 21.

[28] *Id.* at p 22.

[29] *Id.* (citing *Evans v. Union Bank of Switzerland*, No. 01-1507, 2002 WL 31682787 (E.D. La. Nov. 25, 2002) (Engelhardt, J.)).

[30] *Id.* at p. 23 (citing *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273-74 (1988)).

prescriptive period on delictual actions.[31] Abbagnaro explains that the prescriptive period begins to run "from the day injury or damage is sustained," and that the letter was provided in September 2007. Therefore, Abbaganro seeks the dismissal of all claims against her in this action.

In opposition, Thermo argues that Abbagnaro seeks dismissal on "her interpretation of disputed facts," and has therefore "brought a motion for summary judgment, without any discovery heaving been done, and without proper support and notice."[32] Thermo contends that its allegations maintain that Abbagnaro's letter contained representations that convinced Thermo to enter into the agreement, which subsequently resulted in large losses. Specifically, Thermo claims that two representations made in the letter were not true:

> 1. [Cordia] has made all filings with, and has obtained all necessary and appropriate licences and approvals from the federal and State Governmental Authorities, which such licenses and approvals are in full force and effect as of the date hereof, that are necessary to permit [Cordia] to own, lease and operate its properties and to consummate the transactions contemplated in the [agreement].
>
> 2. [Cordia] has the corporate power and authority to execute, deliver and perform under [the agreement]. The execution, delivery and performance of the [agreement] has been duly authorized by all necessary corporate action of [Cordia] and such [agreement] constitutes legal, valid and binding obligation of [Cordia] enforceable against [Cordia] in accordance with its terms.

Thermo claims that "Cordia has made no showing that it obtained the requisite legal authority to incur indebtedness or issue evidence of indebtedness, such as allowing liens to be placed on its assets. Had defendant Abbagnaro disclosed that no authority was obtained for Cordia to incur debt from any state in which it, or any of its subsidiaries, was certified as a regulated telecommunications

---

[31] *Id.* at p. 24.

[32] Rec. Doc. 8 at p. 2.

utility, Thermo would not have gone forward with [the agreement]. Based upon this material misrepresentation alone, the instant motion should be denied."[33]

Thermo stresses that the letter communicated that Cordia had the power to execute, deliver, and perform the agreement, and its "one essential obligation" was to provide eligible receivables to Thermo. Thermo argues that this would also include "the obligation agreed to by Cordia in [the agreement] that all Purchased Receivables were ... 'owned by [Cordia] free and clear of any Adverse claim, and [Cordia] has the right to sell, assign and transfer."[34] While Abbagnaro claims that her letter made no misrepresentations because at the time she wrote the letter no receivables were identified, Thermo contends that Abbaganro "must accept responsibility for a subsequent breach by a company she worked for, and for whom she wrote her [letter] in order for it to secure needed funding, because the subsequent breach was absolutely inevitable based upon the information in her possession."[35] Thermo argues that Abbagnaro knew Cordia operated through subsidiaries, and therefore Abbagnaro knew at the time of the letter that it would not be able to provide eligible receivables as contemplated in the agreement.[36] While Thermo concedes the fact that Cordia disclosed it operated through subsidiaries, Thermo argues that Cordia claimed that "such subsidiaries constitute a single operating segment since the subsidiaries have similar economic characteristics."[37] Thermo suggests that "Abbagnaro bears liability because she represented that Cordia had the power and the authority to perform [the agreement] when this was not correct at that

---

[33] *Id.* at pp. 5-6.

[34] *Id.* at pp. 6-7.

[35] *Id.* at p. 7.

[36] *Id.*

[37] *Id.* at p. 6 (citing Rec. Doc. 5-12 at p. 49).

9

time and was never going to be the case given Cordia's corporate structure. Defendant Abbagnaro omitted critical information."[38]

Thermo argues that questions regarding why the Cordia subsidiaries were not included in the agreement and why Thermo failed to perfect a security interest in those receivables, therefore exposing itself to such great losses, are questions that make the pending motion to dismiss unsuitable.[39] Thermo contends that the Court must also consider several other questions, after discovery, to fully resolve this matter: (1) whether Cordia represented itself in such a way that it was the reasonable understanding of Thermo that Cordia did in fact own receivables which it most certainly produced at the outset of the relationship; (2) whether by Cordia's representations, it was reasonable for Thermo to believe that even though Cordia acted through subsidiaries, it consolidated income and collections such that Cordia owned the receivables; (3) whether Abbagnaro was in a position to know these facts and should have informed Thermo of this; (4) whether the letter was misleading by failing to disclose that Cordia itself generated no receivables; (5) whether the letter was misleading by failing to disclose that Cordia owned no receivables; (6) whether the letter was incorrect when it said that Cordia obtained all appropriate regulatory authority to incur debt; and (7) whether the letter should have advised Thermo that Cordia, based on its corporate structure, could not perform under the agreement.[40] Thermo cites authority that misrepresentation may occur as a result of an omission.[41]

---

[38] *Id.* at p. 8.

[39] *Id.*

[40] *Id.* at p. 9.

[41] *Id.* at p. 12 (citing *Kadlec*, 527 F.3d at 418).

Concerning the defense of peremption, Thermo argues that "this is not a professional liability, or legal malpractice claim, [so § 9:5605 has] no connection in this matter. Abbagnaro was never acting as counsel for Thermo."[42] Instead, Thermo argues that as a delictual obligation, a one-year prescriptive period covers this action and would begin to run once the plaintiff has actual or constructive notice of the tortious act, resulting damage, and the causal connection between the two.[43] Thermo claims that it received payments from Cordia through May 1, 2011, the day the Cordia subsidiaries filed for bankruptcy, and therefore, was not aware nor incurred any damage until that date. Thermo contends that this action was filed in state court on April 18, 2012, and therefore its cause of action had not prescribed at the time of filing.

In reply, Abbagnaro claims that Thermo's attached documents contradict its pleading and therefore judicial deference is given to the documents.[44] Abbagnaro argues that the agreement was a "forward looking document" that did not identify any specific receivables to be sold or encumbered. "Instead, [the agreement] simply mandates that any receivables ultimately offered by Cordia must qualify as 'Eligible Receivables,'" as defined in the agreement.[45]

Next, Abbagnaro contends that the letter never asserted that any future receivable offered by Cordia would qualify as an "Eligible Receivable." Moreover, Abbagnaro argues that Thermo previously admitted that it already knew that only Cordia's separately incorporated entities owned receivables. Additionally, Abbagnaro points out that Thermo has not argued that Cordia lacked the

---

[42] *Id.* at p. 14.

[43] *Id.*

[44] Rec. Doc. 12.

[45] *Id.* at p. 3.

11

corporate power or necessary federal or state consent to conduct the transactions contemplated in the agreement, as the letter indicated. Abbagnaro argues that "instead [Thermo] mounts an indirect attack," that it did not have the power to perform under the agreement because it did not own any "Eligible Receivables" at that time.[46] Abbagnaro reiterates that this was a forward looking agreement and that in Thermo's current and past pleadings, it has admitted that Cordia fully disclosed that Cordia did not independently generate receivables on its own, but rather operated through separately incorporated subsidiaries generating their own clients and accounts receivable.[47]

Abbagnaro further argues that Thermo has identified "no facts existing at the time of the letter that would have prevented Cordia from acquiring free and clear title to accounts receivable originated by its subsidiaries to then use as collateral for purposes of [the agreement]."[48] In fact, Abbagnaro claims that Thermo has conceded elsewhere that this is what it expected to happen, and the agreement would not have made sense otherwise because Thermo and Cordia both knew that Cordia had no immediate source of "Eligible Receivables" aside from its subsidiaries.[49]

In responding to Thermo's argument that § 9:5605 is inapplicable to this action, Abbagnaro argues that it is immaterial that she was not acting as their lawyer, because this section applies to damages "arising out of an engagement to provide legal services," whether "based upon tort, breach of contract, or otherwise."[50] Abbagnaro argues that the letter provided legal opinions, and therefore implicates this provision.

---

[46] *Id.* at p. 6.

[47] *Id.*

[48] *Id.*

[49] *Id.* at pp. 6-7 (citing 5-2 at ¶ 39 and 5-6).

[50] *Id.* at p. 8.

Finally, Abbagnaro argues that if this is viewed as a simple tort, a one-year prescriptive period applies. Abbagnaro claims that at the time of the first transaction in September 2007, Thermo was made aware that the receivables were owned by subsidiaries, not Cordia itself, and therefore would have been apprised that any "inconsistent 'inferences' it might otherwise have drawn from Ms. Abbagnaro's Opinion Letter were inaccurate."[51] Therefore, Abbagnaro argues that this cause of action prescribed by September 24, 2008, at the latest.

### III. Standard on a Motion to Dismiss

On a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "the central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."[52] "A motion to dismiss on the basis of the pleadings alone should rarely be granted."[53] Although a court must accept the factual allegations in the pleadings as true, the plaintiff must plead enough facts to state a claim to relief that is plausible on its face.[54] "Conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[55] While typically a court may only consider the complaint when deciding a motion to dismiss, if the complaint references or has documents attached to it, those documents may be considered as well. If the document contradicts the pleading, the document takes prominence.[56]

---

[51] *Id.* at pp. 9-10.

[52] *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008).

[53] *Madison* v. *Purdy*, 410 F.2d 99, 100 (5th Cir. 1969)

[54] *Doe*, 528 F.3d at 418 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

[55] *Drs. Bethea, Moustoukas & Weaver, LLC v. St. Paul Guardian Ins. Co.*, 376 F.3d 399, 403 n. 7 (5th Cir. 2004).

[56] *Assoc. Builders*, 505 F.2d at 100.

**IV. Law and Analysis**

*A. Peremption/Prescription*

Before addressing the sufficiency or viability of Thermo's claims, the Court will first determine if Thermo's claims are perempted or prescribed. Abbagnaro argues that Louisiana Revised Statute § 9:5605 applies to Thermo's claims against her, which imposes a three year peremptive period. This statute reads:

> No action for damages against any attorney at law duly admitted to practice in this state, any partnership of such attorneys at law, or any professional corporation, company, organization, association, enterprise, or other commercial business or professional combination authorized by the laws of this state to engage in the practice of law, whether based upon tort, or breach of contract, or otherwise, arising out of an engagement to provide legal services shall be brought unless filed in a court of competent jurisdiction and proper venue within one year from the date of the alleged act, omission, or neglect, or within one year from the date that the alleged act, omission, or neglect is discovered or should have been discovered; however, even as to actions filed within one year from the date of such discovery, in all events such actions shall be filed at the latest within three years from the date of the alleged act, omission, or neglect.

Abbagnaro claims that despite the plain reading of the statute's language, the three year peremptive period should nonetheless apply to her as an out-of-state attorney. However, the Fifth Circuit has expressly declined to extend this statute's applicability to out-of-state attorneys. In *Henry v. Duane Morris*, *LLP*,[57] an out-of-state defendant attorney sought the protection of the three year peremptive period of this statute against a legal malpractice suit. The Fifth Circuit noted that the Louisiana Supreme Court had yet to rule on this issue, and therefore declined to guess how it would come down on the issue.[58] Instead, the Fifth Circuit applied the more general one-year prescriptive period

---

[57] 210 Fed. App'x 356 (5th Cir. 2006).

[58] *Id.* at 359.

14

of Louisiana Civil Code article 3492.[59] This Court declines to extend § 9:5605 further than either the Louisiana Supreme Court or the Fifth Circuit when it was confronted with this issue.[60] Therefore, the Court will follow the Fifth Circuit's approach in *Henry*, and apply the one-year prescriptive period of Louisiana Civil Code article 3492.

Abbagnaro has argued in the alternative that Louisiana Civil Code article 3492 applies to Thermo's claims, and Thermo has not disputed the applicability of this statute to its claims.[61] Article 3492 reads:

> Delictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained.

Louisiana appellate courts have held that for a claim of negligent misrepresentation, prescription begins to run "on the day the actual and appreciable damage is sustained."[62]

In *National Council on Compensation Insurance v. Quixx Temporary Services, Inc,*[63] plaintiff brought an action against defendant for negligent misrepresentation. Based on information provided by defendant, plaintiff arranged for a worker's compensation policy to issue to defendant. Later, plaintiff claimed that the defendant misrepresented its payroll and therefore it received a policy at

---

[59] *Id.*

[60] The Court also notes that unlike in *Henry*, Thermo has not brought a "malpractice claim" against Abbagnaro, but instead has brought a claim for "negligent misrepresentation." While Abbagnaro argues that Thermo's claim relates to legal services, and is therefore encompassed by 9:5605, the Fifth Circuit has expressly stated that "La. Rev. Stat. Ann. § 9:5605 is Louisiana's statute governing the prescriptive period for malpractice suits." *Id.* As such, this Court is doubtful that this statute would even be applicable if the court were to extend it to apply to out-of-state attorneys.

[61] *See* Rec. Doc. 8 at p. 15.

[62] *Nat'l Council on Compensation Ins. v. Quixx Temporary Servs., Inc.*, 95-0725 (La. App. 4 Cir. 11/16/95); 665 So.2d 120, 122.

[63] *Id.*

15

a reduced premium.[64] Defendant argued that plaintiff's cause of action had prescribed, because the action was filed more than a year after the alleged misrepresentation. The court held that plaintiffs sustained actual damages when the policies were issued and the first premium was accepted, because at that time plaintiff received less than it was entitled to from the premium.[65]

Abbagnaro claims that prescription began to run on September 21, 2007, when Thermo entered into the agreement with Cordia. Thermo argues that it only first incurred damage on May 1, 2011, when the Cordia subsidiaries filed for bankruptcy protection, because until that date it received payments for the receivables.[66] Further, Thermo claims that it had no knowledge of "the negligence of Cordia and defendant Abbagnaro," before it knew that the Cordia subsidiaries would not be bound by the agreement.[67]

This situation is distinguishable than that in *Quixx*. In *Quixx*, the Louisiana Fourth Circuit Court of Appeal held that the prescriptive period began to run at the time of the first premium payment, because when the plaintiffs received the premium, it was for an amount lower than the amount it actually should have paid; therefore, upon this first payment, the plaintiff sustained damage.[68] Here, up until the Cordia subsidiaries filed for bankruptcy, Thermo received full payment on the receivables. It was only after the Cordia subsidiaries initiated bankruptcy that actual damage was sustained by Thermo, because they no longer were paid on the receivables. Abbagnaro also has argued that Thermo was made aware that the receivables it purchased previously were owned by the

---

[64] *Id.* at 121.

[65] *Id.*

[66] Rec. Doc. 8 at p. 15.

[67] *Id.*

[68] *Quixx*, 556 So.2d at 122.

Cordia subsidiaries, not Cordia itself, and therefore Thermo had knowledge much sooner. However, this argument ignores that the prescriptive period begins when damage is sustained. The damage alleged by Thermo is not that the receivables were not owned by Cordia's subsidiaries, but rather that Thermo was unable to receive payment on the receivables, which should not have been offered to Thermo under the agreement, after the Cordia subsidiaries filed for bankruptcy. Therefore, prescription began on May 1, 2011, and this action was timely filed before the causes of action prescribed.

### *B. Failure to State a Claim*

Under Louisiana law, to prevail on a cause of action for negligent misrepresentation, a plaintiff must prove "that the defendant had a duty to supply correct information, that the defendant breached that duty, and that the defendant's breach caused damages to the plaintiff."[69] A defendant may be liable for omissions as well as affirmative defenses under a theory of negligent misrepresentation if the plaintiff justifiably relied on the omission or misrepresentation.[70]

While Abbagnaro has not argued that she did not owe a duty to Thermo, the Court will briefly address the issue here. In *Barrie v. V.P. Exterminators, Inc.*,[71] plaintiffs brought an action against the defendant for negligent misrepresentation. The defendant was an exterminator who was retained by a third party to conduct an investigation and draft a "wood destroying insect report" for a home plaintiffs considered purchasing. If the report indicated that the home was "free and clear" of termite damage, plaintiffs would purchase the house. The defendant issued the report which

---

[69] *Id.*

[70] *Sys. Eng'g & Sec., Inc. v. Sci. & Eng'g Assocs., Inc.*, 2009-0974 (La. App. 4 Cir. 6/20/07); 962 So.2d 1089, 1092.

[71] 625 So.2d 1007 (La. 1993).

claimed that the dwelling was free and clear of insect damage, and plaintiffs purchased the house. However, plaintiffs claimed that within three days they found evidence of extensive terminate damage.[72]

On review, the Louisiana Supreme Court discussed in depth when a duty is owed on a cause of action for negligent misrepresentation. The court acknowledged that a duty may exist in cases "involving non-clients or third parties," and "in cases where privity of contract is absent but there is communication of the information by the tortfeasor directly to the user or the user's agent."[73] The Louisiana Supreme Court held that the defendant owed a duty to the non-client plaintiffs because "they were known to [defendant] as the intended users of the report."[74] The Louisiana Supreme Court further explained that the defendant "owed a duty to [plaintiffs] because of its knowledge that the ultimate purpose for the report, and its employment, was to facilitate the sale of the dwelling it inspected."[75]

Here, while Abbagnaro was neither an employee nor Thermo's attorney, under Louisiana jurisprudence that alone does not eliminate the possibility that she owed Thermo a duty. In the petition, Thermo avers, similar to the allegations in *Barrie*, that Abbagnaro knew Thermo would rely upon the letter when deciding whether or not to enter into the agreement, and therefore she owed Thermo a duty to provide correct information.[76] Again, Abbagnaro has not disputed that she owed Thermo a duty. Therefore, taking the allegations in the petition as true, Thermo has alleged facts

---

[72] *Id.* at 1008-09.

[73] *Id.* at 1015.

[74] *Id.* at p. 1016.

[75] *Id.*

[76] Rec. Doc. 1-1 at ¶ 10.

18

sufficient to establish that Abbagnaro owed it a duty.

However, Abbagnaro has argued that Thermo's claims should be dismissed because it has failed to allege facts that give rise to a cause of action for negligent misrepresentation, because nothing in the letter was false. In addition, Abbagnaro has directed the Court to language in the letter that expressly instructs Thermo not to make any inferences from the letter. In the petition, Thermo claims that Abbagnaro is liable for "[f]ailing to provide accurate and truthful information regarding Cordia's ability to enter and perform the transaction contemplated by [the agreement]."[77] Further, in opposition to the pending motion, Thermo explains that it believes "Abbagnaro bears liability because she represented that Cordia had the power and authority to perform the [agreement] when this was not correct at that time and was never going to be the case given Cordia's corporate structure. Defendant Abbagnaro omitted critical information."[78] Both of these statements allege omissions that may impose liability on Abbagnaro. Whether a defendant has breached a duty to disclose is a question of fact in an action for negligent misrepresentation.[79] Therefore, this matter cannot be resolved on a motion to dismiss, because the finder of fact must determine if certain omissions in Abbagnaro's letter breached a duty to Thermo. If the letter omitted certain critical facts, then it is irrelevant if the letter instructed Thermo not to draw any inferences.

---

[77] *Id.* at ¶ 20.a.

[78] Rec. Doc. 8 at p. 8.

[79] *Waddles v. LaCour*, 2006-1245 (La. App. 3 Cir. 2/7/07); 950 So.2d 937, 942.

### V. Conclusion

Considering the foregoing, the Court finds that Thermo has stated a claim against Abbagnaro upon which relief can be granted. Accordingly,

**IT IS HEREBY ORDERED** that Defendant Abbagnaro's Motion to Dismiss[80] is **DENIED**.

**NEW ORLEANS, LOUISIANA**, this 4th day of February, 2013.

                                          **NANNETTE JOLIVETTE BROWN**
                                          **UNITED STATES DISTRICT JUDGE**

---

[80] Rec. Doc. 5.